IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH DIVISION

| | |
|---|---|
| BLAIR DOUGLASS, on behalf of himself and all others similarly situated,<br><br>               Plaintiff,<br><br>    v.<br><br>COOKUNITY INC.,<br><br>               Defendant. | Case No. 2:25-cv-01270 |

**EXHIBIT 1**
**CLASS ACTION SETTLEMENT AGREEMENT**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH DIVISION

| | |
|---|---|
| BLAIR DOUGLASS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COOKUNITY INC.,<br><br>Defendant. | Civil Action No. 2:25-cv-01270 |

## CLASS ACTION SETTLEMENT AGREEMENT

Table of Contents

1.    Introduction ................................................................................................ 1

2.    Definitions ................................................................................................... 1

3.    Conditions Precedent ................................................................................. 6

4.    CookUnity Shall Make the Digital Properties Accessible ........................ 6

5.    No Overlays ................................................................................................ 7

6.    Third-Party Content ................................................................................... 7

7.    Accessibility Coordination Team ............................................................... 7

8.    Accessibility Consultant and Status Report .............................................. 8

9.    Initial Accessibility Audit .......................................................................... 9

10.   Accessibility Strategy ................................................................................ 9

11.   Accessibility Statement And Accessibility Feedback Form ..................... 9

12.   Accessibility Training ................................................................................ 12

13.   Customer Service Training ......................................................................... 12

14.   Modified Bug Fix Priority ......................................................................... 12

15.   Accessibility Support ................................................................................. 13

16.   Semi-Annual Automated Accessibility Audit ........................................... 13

17.   Annual End-User Accessibility Testing ..................................................... 13

18.   Agreement Term ......................................................................................... 14

19.   Monitoring of Compliance ......................................................................... 14

20.   CookUnity's Reporting Schedule ............................................................... 14

21.   Scope of Agreement ................................................................................... 16

22.   Incentive Award to Named Plaintiff .......................................................... 16

23. Annual Report and Meet-and-Confers .................................................................. 17

24. Dispute Resolution Procedure ............................................................................. 17

25. Attorneys' Fees and Costs ................................................................................... 19

26. Preliminary Approval, Objections, and Fairness Hearing ................................... 20

27. Notice ................................................................................................................... 21

28. Judgment, Final Approval, and Dismissal ........................................................... 24

29. No Admission of Liability .................................................................................... 24

30. Terms Not Confidential; Non-Disparagement ..................................................... 24

31. Release ................................................................................................................. 25

32. Entire Agreement ................................................................................................. 25

33. Amendment ........................................................................................................... 25

34. Severability .......................................................................................................... 25

35. Drafting of this Agreement .................................................................................. 25

36. Execution in Counterparts .................................................................................... 25

37. Authority .............................................................................................................. 25

38. Continuing Jurisdiction ........................................................................................ 26

39. Deadlines .............................................................................................................. 26

40. Communications to Named Plaintiff, Class Counsel, the Settlement Class, and CookUnity ....................................................................................................... 26

<u>Settlement Agreement</u>

1.    **Introduction.** This Agreement (all capitalized terms shall have the meanings set forth in Section 2) is entered into by and between CookUnity and Named Plaintiff, individually and on behalf of the Settlement Class.

    1.1.    CookUnity operates and controls the Website, which is open to consumers in the United States through the internet and the Mobile Applications, which are available for download from the Apple App Store and Google Play.

    1.2.    This Agreement applies to the Website, Mobile Applications, but not Subsequently Abandoned Websites and Mobile Apps.

    1.3.    Named Plaintiff uses Appropriate Auxiliary Aids and Services to access digital information and is a person with a disability as that term is used in the ADA. Named Plaintiff has attempted to patronize the Website and intends to do so again in the future.

    1.4.    On or about August 19, 2025, Named Plaintiff filed this Lawsuit, alleging that CookUnity does not have, and has never had, adequate corporate policies and practices that are reasonably calculated to cause the Website to be Accessible to individuals who are Blind and/or who have a Visual Disability, in violation of the ADA.

    1.5.    CookUnity denies Named Plaintiff's allegations but the Parties nevertheless wish to affect a complete resolution and settlement of all claims, disputes, and controversies relating to the allegations of Named Plaintiff and the Settlement Class, and to resolve their differences and disputes by settling this Lawsuit.

    1.6.    This Agreement is binding on CookUnity's subsidiaries, successors, and assigns.

2.    **Definitions.**

    2.1.    **"Accessibility Consultant"** means the person or company designated by CookUnity to serve the purposes of Section 8 of this Agreement.

    2.2.    **"Accessibility Coordinator"** means the person designated by CookUnity to serve in the role described in Section 7 of this Agreement.

    2.3.    **"Accessibility Feedback Form"** means a form in CookUnity's Accessibility Statement required by Section 11 of this Agreement.

2.4.     **"Accessibility Feedback Form Log"** means a logbook that CookUnity maintains to track the submissions described by Section 11 of this Agreement.

2.5.     **"Accessibility Statement"** means the statement required by Section 11 of this Agreement that must demonstrate CookUnity's commitment to implementing Accessible services to individuals who are Blind and/or who have a Visual Disability.

2.6.     **"Accessibility Strategy"** means the corrective action strategy required by Section 10 of this Agreement.

2.7.     **"Accessibility Support Personnel"** means the individuals providing the support required by Section 15 of this Agreement.

2.8.     **"Accessible"** or **"Accessibility"** refers to digital content that provides effective communication to all users. The parties agree that content that substantially conforms to the success criteria of the WCAG 2.1 A/AA meets this definition.

2.9.     **"ADA"** means Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq*., and its implementing regulations.

2.10.    **"Agreement"** means this settlement agreement.

2.11.    **"Agreement Term"** means the time from the Effective Date through the end of one (1) year from the Effective Date, including any modifications under Section 18.

2.12.    **"Annual End-User Accessibility Testing"** means the annual testing required by Section 17 of this Agreement. Such testing focuses on the end-user experience by typical individuals who are Blind and/or who have a Visual Disability. Annual End-User Accessibility Testing shall not require an assessment of compliance with WCAG 2.1.

2.13.    **"Annual Report"** means the document CookUnity shall submit to Class Counsel on the Effective Date's anniversary date during the Agreement Term pursuant to Section 23 of this Agreement, stating the status of this Agreement's implementation and identifying any outstanding issues on which the Parties are in disagreement.

2.14.    **"Appropriate Auxiliary Aids and Services"** means the term as defined by the ADA regulations in § 36.303 and as applied to the individuals who are Blind and/or who have a Visual Disability.

2.15.   **"Blind and/or who have a Visual Disability"** means, with respect to an individual, an impairment that substantially limits the major life activity of seeing, in accordance with the definition of disability set forth in the ADA, 42 U.S.C. § 12102(1)-(2).

2.16.   **"Class Counsel"** means Kevin Tucker, Kevin Abramowicz, Stephanie Moore, Chandler Steiger, Kayla Conahan, and Jessica Liu of East End Trial Group LLC.

2.17.   **"CookUnity"** means CookUnity Inc.

2.18.   **"CookUnity Parties"** means CookUnity and its present and former parents and subsidiaries and each of their respective present, former, or future officers, directors, employees, shareholders, administrators, executors, affiliates, successors, and assigns.

2.19.   **"CookUnity Personnel"** means all persons who are employed by CookUnity and who have managerial responsibility for the design and development of the Website and Mobile Applications.

2.20.   **"CookUnity Settlement Contact"** means a CookUnity employee designated as the initial point of contact for Class Counsel with respect to issues concerning this Agreement. CookUnity shall notify Class Counsel in writing of the employee designated as the CookUnity Settlement Contact within ten (10) days of the Effective Date. CookUnity shall also notify Class Counsel in writing should a new employee be designated as the CookUnity Settlement Contact during the Agreement Term. Such notice shall be required within ten (10) days of designation of the new CookUnity Settlement Contact.

2.21.   **"Costs"** means all out-of-pocket expenses reasonably incurred, and shall include (but not be limited to) amounts payable to experts.

2.22.   **"Court"** means the United States District Court for the Western District of Pennsylvania.

2.23.   **"Digital Properties"** means the Website and Mobile Applications.

2.24.   **"Dispute Resolution Procedure"** means the process described in Section 24 of this Agreement.

2.25.   **"Effective Date"** means the date on which all conditions precedent set forth in Section 3 of this Agreement are completed.

2.26.   **"Final Approval"** means the period thirty-one (31) days following approval of this Agreement given in a written order by a United States District Court Judge or Magistrate of competent jurisdiction after notice to the Settlement Class and hearing, provided no appeal is filed during this period. If an appeal is filed, then Final Approval shall mean the period thirty-one (31) days following the exhaustion of any and all appeal(s).

2.27.   **"Initial Accessibility Audit"** means the initial audit required by Section 9 of this Agreement.

2.28.   **"Incentive Award"** means the total amount set forth in Section 22.1 to be paid to Named Plaintiff pursuant to that section.

2.29.   **"Injunctive Releasing Parties"** means Named Plaintiff and the Settlement Class Members, and each of their executors, successors, heirs, assigns, administrators, agents, and representatives.

2.30.   **"Lawsuit"** means *Douglass v. CookUnity Inc.*, Case No. 2:25-cv-01270 (W.D. Pa.).

2.31.   **"Letter of Accessibility"** means the letter issued by the Accessibility Consultant that confirms the Digital Properties are Accessible, explains the testing standards, and summarizes both the remediation efforts CookUnity has taken during the Agreement Term and the policies and practices CookUnity has adopted to maintain the Digital Properties in an Accessible manner going forward.

2.32.   **"Mobile Applications"** means CookUnity's mobile applications available for download on the Apple App Store and on Google Play

2.33.   **"Modified Bug Fix Priority"** means the policies required by Section 14 of this Agreement.

2.34.   **"Named Plaintiff"** means Blair Douglass.

2.35.   **"Named Plaintiff's Reasonable Attorneys' Fees and Costs"** means the total amount set forth in Section 25.1 to be paid to Class Counsel pursuant to that section.

2.36.   **"Notice Deadline"** means the deadline for publishing notice to be set by the Court as part of the Preliminary Approval process.

2.37.   **"Overlay"** means technologies that aim to improve the accessibility of a website by applying a third-party source code (typically Javascript) to make improvements to the website's front-end code. Overlays often apply a script to a webpage which

scans the webpage's code and attempts to repair accessibility barriers automatically.

2.38.   **"Parties"** refers to CookUnity, Named Plaintiff, and the Settlement Class.

2.39.   **"Party"** refers to CookUnity, Named Plaintiff, or the Settlement Class.

2.40.   **"Preliminary Approval"** means the initial approval by the Court of the terms of this Agreement, which will occur before any notice being provided in accordance with this Agreement.

2.41.   **"Released Injunctive Claims"** means any and all claims, rights, demands, charges, complaints, actions, suits, and causes of action, whether known or unknown, suspected or unsuspected, accrued or unaccrued, for injunctive, declaratory, or non-monetary relief, based on the Accessibility of the Digital Properties to individuals who are Blind and/or who have a Visual Disability, including any injunctive, declaratory, or non-monetary claims under: (i) the ADA; and (ii) any state or local statutory, administrative, regulatory, or code provisions that either (a) directly incorporate the ADA or (b) set forth standards or obligations coterminous with or equivalent to the ADA. The Released Injunctive Claims cover all conduct concerning the Accessibility of the Digital Properties through the Agreement Term.

2.42.   **"Semi-Annual Automated Accessibility Audit"** means the semi-annual audit required by Section 16 of this Agreement.

2.43.   **"Settlement Class"** or **"Settlement Class Members"** means a national class of individuals who are Blind and/or who have a Visual Disability and who use Appropriate Auxiliary Aids and Services to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who will access, attempt to access, or be deterred from attempting to access, the Website from the United States.

2.44.   **"Settlement Website"** means the website located at https://www.cookunityADAsettlement.com.

2.45.   **"Status Report"** means a written evaluation that (a) identifies content, features, and services on the Digital Properties that are not Accessible to individuals who are Blind and/or who have a Visual Disability and who use Appropriate Auxiliary Aids and Services, and (b) recommends steps CookUnity should take to ensure their remediation.

2.46.   **"Subsequently Abandoned Websites and Mobile Apps"** means any website or mobile application, including the Digital Properties, that CookUnity ceases to

operate or make publicly available to consumers in the United States after the Effective Date of this Agreement.

2.47. **"Third-Party Content"** means JavaScript-based programming developed by an entity outside of CookUnity or its contractors and that is deployed as a commercial add-on or plug-in for features such as direct customer communication or interaction (*e.g.*, chat or information submission or posting of photographs), payment processing (*e.g.*, Klarna, Affirm, Stripe, etc.), or advertising (*e.g.*, banner or pop-up advertisement).

2.48. **"WCAG 2.1"** means the Web Content Accessibility Guidelines 2.1 A/AA, developed by the W3C and available at https://www.w3.org/TR/WCAG21/

2.49. **"Website"** means the digital property located at https://www.cookunity.com/.

**3.    Conditions Precedent.** This Agreement shall be conditioned and effective only upon the occurrence of all of the following events.

3.1. The Court grants Preliminary Approval of this Agreement and orders certification of the Settlement Class and notice to the Settlement Class Members.

3.2. Notice is provided to the Settlement Class Members in accordance with Section 27 of this Agreement.

3.3. The Court grants Final Approval of this Agreement and enters judgment in accordance with the terms herein after a fairness hearing has been conducted and all such orders and approvals have become final and non-appealable.

**4.    CookUnity Shall Make the Digital Properties Accessible.** CookUnity shall ensure individuals who are Blind and/or who have a Visual Disability have full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations CookUnity provides by and through the Digital Properties as provided for in this Section. CookUnity shall ensure the U.S. portions of the Digital Properties are Accessible by the end of the Agreement Term.

**5.    No Overlays.** For the purpose of this Agreement, "overlay" solutions such as those provided by the following companies as of the Effective Date, will not suffice by themselves to achieve conformance with WCAG 2.1 AA: AccessiBe, Accessibility Adapter, Accessiblelink, Accessibly, Accessiway, Adally, Adapte Mon Web (Adapt my Web), Allyable, Amaze, AudioEye, Bakh Fix, DIGIaccess, Eye-Able.com, Equally.ai, EqualWeb, FACIL'iti, Lisio, MaxAccess, MK-Sense, Poloda AI, Purple Lens, ReciteME, Sogo, TruAbilities, True Accessibility, UsableNet, User1st, and UserWay.

6. **Third-Party Content.**

6.1. CookUnity shall not be required to ensure Third-Party Content is Accessible unless the Third-Party Content is necessary for consumers to independently add an item to their shopping cart, complete a purchase, receive information about a discount, promotion, special offer, or installment plan, or contact CookUnity's customer service.

6.2. After the Effective Date of this Agreement, for each new, renewed, or renegotiated contract with a vendor of Third-Party Content, CookUnity shall request that the vendor provide Accessible content. If, during this contracting process, CookUnity issues a request for a proposal for development or inclusion of Third-Party Content on the Digital Properties, then CookUnity shall include Accessibility as a criterion. For Third-Party Content, CookUnity shall seek out such content that ensures Accessibility or that the Accessibility Consultant determines can be made Accessible.

7. **Accessibility Coordinator.**

7.1. The Accessibility Coordinator shall be responsible for coordinating CookUnity's compliance with Sections 4 through 18 of this Agreement.

7.2. CookUnity shall maintain the Accessibility Coordinator through at least the end of the Agreement Term.

8. **Accessibility Consultant and Status Report.**

8.1. Within six (6) months of the Effective Date of this Agreement, CookUnity shall appoint or retain an Accessibility Consultant who is knowledgeable about digital accessibility, the ADA, WCAG 2.1, and Accessibility. CookUnity shall inform Class Counsel of its selection of an Accessibility Consultant. If Class Counsel or Named Plaintiff objects to CookUnity's selection as inadequate to represent the interests or needs of individuals who are Blind and/or who have a Visual Disability, the Parties will work in good faith to resolve such objection pursuant to the Dispute Resolution Procedure.

8.2. The Accessibility Consultant's duties shall include: (a) assisting CookUnity with conducting the Initial Accessibility Audit; (b) ensuring that the Initial Accessibility Audit was done in a manner consistent with Section 9.2; (c) advising CookUnity as to how to make the Digital Properties Accessible; and (d) verifying that the Digital Properties are Accessible in the Letter of Accessibility.

8.3.    Before each anniversary date of the Effective Date of this Agreement, the Accessibility Consultant shall provide CookUnity with a Status Report. In the Status Report, the Accessibility Consultant shall: (a) identify content, features, and services on the Digital Properties that are not Accessible to individuals who use Appropriate Auxiliary Aids and Services; and (b) recommend steps CookUnity should take to ensure the Accessibility of the Digital Properties.

8.4.    CookUnity shall include copies of the Letter of Accessibility and the Status Report as exhibits to the Annual Report provided to Class Counsel on the anniversary of the Effective Date during the Agreement Term.

8.5.    CookUnity shall notify Class Counsel if it appoints or retains a new Accessibility Consultant during the Agreement Term.

## 9.    Initial Accessibility Audit.

9.1.    Prior to the development of an Accessibility Strategy, CookUnity shall complete the Initial Accessibility Audit to identify Accessibility barriers that exist in the Digital Properties.

9.2.    The Initial Accessibility Audit shall be conducted in a professional manner and shall be benchmarked by appropriate processes, including automated and end-user testing, consistent with the Accessibility Consultant's recommendations. End-user testing must be performed by individuals who have training and experience in the appropriate assistive technology that individuals who are Blind and/or who have a Visual Disability use to navigate, browse, and shop online.

9.3.    CookUnity shall include the results of the Initial Accessibility Audit as an exhibit to the Annual Report due to Class Counsel on the Effective Date's first anniversary.

## 10.    Accessibility Strategy.

10.1.    Within twelve (12) months of the Effective Date of this Agreement, CookUnity shall develop and implement an Accessibility Strategy designed to ensure that the Digital Properties are Accessible by the end of the Agreement Term.

10.2.    In developing and implementing the Accessibility Strategy, CookUnity shall consider this Agreement, the Initial Accessibility Audit, the Accessibility Statement, and the recommendations and Status Reports of the Accessibility Consultant.

10.3.    Within twelve (12) months of the Effective Date of this Agreement, CookUnity shall provide a copy of the Accessibility Strategy to Class Counsel.

10.4.   Within twelve (12) months of the Effective Date of this Agreement, CookUnity shall disseminate the Accessibility Strategy among CookUnity Personnel.

**11.    Accessibility Statement and Accessibility Feedback Form.**

11.1.   Within nine (9) months of the Effective Date of this Agreement, CookUnity shall develop the Accessibility Statement.

11.2.   The Accessibility Statement shall advise visitors that CookUnity is making efforts to ensure that its Digital Properties conform to WCAG 2.1 A/AA and include an Accessibility Feedback Form that encourages visitors who are Blind and/or who have a Visual Disability to provide feedback to help improve the accessibility of the Digital Properties.

11.3.   CookUnity shall maintain user submissions received through the Accessibility Feedback Form in the Accessibility Feedback Form Log throughout the Agreement Term and any extensions thereto. In addition to the fields identified in Section 11.2, the Accessibility Feedback Form Log shall track at least the following information:

11.3.1.   A description of what assistance, if any, CookUnity offered to provide the party who completed the Accessibility Feedback Form;

11.3.2.   A description of what alteration, if any, CookUnity made to its Digital Properties in response to the Accessibility Feedback Form submission;

11.3.3.   A notation of whether the party who completed the Accessibility Feedback Form indicated their problem, if any, has been resolved.

11.4.   If visitors who are Blind and/or who have a Visual Disability provide accessibility-related feedback to Class Counsel, Named Plaintiff, or CookUnity through any other avenue (*e.g.* physical mail or email, *etc.*), Class Counsel, Named Plaintiff, and CookUnity shall respond by encouraging the visitors to complete the Accessibility Feedback Form.

11.5.   Within nine (9) months of the Effective Date of this Agreement, CookUnity shall provide a copy of the Accessibility Statement to Class Counsel.

11.6.   Within nine (9) months of the Effective Date of this Agreement, CookUnity shall add a link at the beginning of all Digital Properties, directing individuals who are Blind and/or who have a Visual Disability to the Accessibility Statement. CookUnity shall have the option to make this link invisible to customers who do not use Appropriate Auxiliary Aids and Services, provided that this link is otherwise Accessible.

11.7.   The Annual Report shall state the status of the implementation of Section 11 and include a copy of the Accessibility Feedback Form Log for the previous twelve (12) months.

**12.    Accessibility Training.**

12.1.   Within twelve (12) months of the Effective Date of this Agreement, CookUnity shall train all employees responsible for website or mobile application design, development, or maintenance to ensure the future design, development, and maintenance of the Digital Properties are and remain conformant to WCAG 2.1 A/AA.

12.2.   CookUnity shall provide Accessibility training to all newly-hired employees responsible for website or mobile application design, development, or maintenance within the latter of twelve (12) months of the Effective Date of this Agreement or 180 days of their hire date.

12.3.   Commencing in 2026, CookUnity shall ensure that all then-current employees responsible for website or mobile application design, development, or maintenance are provided with refresher Accessibility training at regular intervals that shall not exceed two years.

**13.    Customer Service Training.** CookUnity shall ensure its customer service personnel are trained to assist individuals with disabilities (including individuals who are Blind and/or who have a Visual Disability) who encounter difficulties using the Digital Properties and to timely assist such individuals within published hours of operation.

**14.    Modified Bug Fix Priority.**

14.1.   Within twelve (12) months of the Effective Date of this Agreement, CookUnity shall make reasonable efforts to modify its existing bug fix policies, practices, and procedures to include the elimination of bugs that create Accessibility barriers, including those that prohibit effective communication or impair the Accessibility of the Digital Properties.

14.2.   CookUnity shall ensure that any bugs that create Accessibility barriers to the Digital Properties are remedied with the same level of priority (*e.g.*, speed, resources used to remedy, *etc.*) as any other equivalent loss of function for individuals who are not Blind and who do not have a Visual Disability for the same type of content.

14.3.   CookUnity shall provide a copy of the Modified Bug Fix Priority as an exhibit to the Second Annual Report.

15.     **Accessibility Support.** Within twelve (12) months of the Effective Date of this Agreement, CookUnity shall provide support during regular business hours to assist individuals who are Blind and/or who have a Visual Disability with resolving Accessibility issues regarding the Digital Properties.

16.     **Semi-Annual Automated Accessibility Audit.**

16.1.   During the Agreement Term, CookUnity, the Accessibility Consultant, or a consultant retained on its behalf, shall perform Semi-Annual Automated Accessibility Audits (every six months) to evaluate whether the Digital Properties are Accessible.

16.2.   The CookUnity Settlement Contact shall forward the results of the Semi-Annual Automated Accessibility Audit to Class Counsel as part of the next Annual Report that CookUnity must provide Class Counsel pursuant to this Agreement.

17.     **Annual End-User Accessibility Testing.**

17.1.   During the Agreement Term, the Accessibility Consultant shall perform Annual End-User Accessibility Testing, with such testing to be performed by individuals who have training and experience in the manner in which individuals who are Blind and/or who have a Visual Disability use Appropriate Auxiliary Aids and Services to navigate, browse, and shop online, to evaluate whether the Digital Properties are Accessible.

17.2.   The CookUnity Settlement Contact shall forward the results of the Annual End-User Accessibility Testing to Class Counsel as part of the next Annual Report that CookUnity must provide Class Counsel pursuant to this Agreement.

18.     **Agreement Term.** The Agreement Term shall last one (1) year from the Effective Date. CookUnity, Class Counsel, and Plaintiff agree to work in good faith to secure a Letter of Accessibility as soon as practicable throughout the Agreement.

19.     **Monitoring of Compliance.** Class Counsel and Named Plaintiff shall monitor CookUnity's compliance with Sections 4 through 18 of this Agreement as described in this Section.

19.1.   Class Counsel and Named Plaintiff shall be entitled to visit the Digital Properties at any time without notice for the purpose of evaluating CookUnity's compliance with Sections 4 through 18 of this Agreement.

19.2.   CookUnity shall include a copy of the Accessibility Feedback Form Log for the previous twelve (12) months in the Annual Report. For at least six (6) months after

the Annual Report in which they are logged, CookUnity shall retain copies of all Accessibility Feedback Form submissions for inspection by Class Counsel and/or Named Plaintiff before the parties' annual meet-and-confer described in Section 23 of this Agreement.

20.    **CookUnity's Reporting Schedule.** CookUnity shall provide the following information to Class Counsel during the Agreement Term.

| Information | Deadline | *See* Agreement at Section |
|---|---|---|
| The Annual Report | On the Effective Date's anniversary date during the Agreement Term | 23.1 |
| The Letter of Accessibility | To be included as an exhibit to the Annual Report | 8.4 |
| Confirmation CookUnity has appointed or retained the Accessibility Consultant | Within six (6) months of the Effective Date | 8.1 |
| The Accessibility Consultant's Status Report | To be included as an exhibit to the Annual Report | 8.4 |
| Results of the Initial Accessibility Audit | To be included as an exhibit to the Annual Report | 9.3 |
| The Accessibility Strategy | Within twelve (12) months of the Effective Date | 10.3 |
| The Accessibility Statement | Within nine (9) months of the Effective Date | 11.5 |
| Status of the Accessibility Statement | To be included in the Annual Report | 11.7 |
| Results of the Semi-Annual Automated Accessibility Audit | To be included in the Annual Report | 16.2 |

| Results of the Annual End-User Accessibility Testing | To be included in the Annual Report | 17.2 |
| Accessibility Feedback Form Log | To be included in the Annual Report | 19.2 |
| Annual Report and Meet-and-Confers | On the Effective Date's anniversary date | 23 |

**21.    Scope of Agreement.**

21.1.   The provisions of this Agreement shall apply to CookUnity's policies, practices, and procedures with respect to individuals who are Blind and/or who have a Visual Disability within the United States who use Appropriate Auxiliary Aids and Services to access the Digital Properties. The data CookUnity periodically reports to Class Counsel pursuant to this Agreement shall contain relevant information for these individuals.

21.2.   The provisions of this Agreement shall not apply to Subsequently Abandoned Websites and Mobile Apps.

21.3.   Named Plaintiff expressly agrees that the resolution described herein is fair and adequate, and that the policies and procedures set forth in this Agreement are intended to remedy any and all alleged violations of the ADA and related state and local laws by CookUnity with respect to the claims alleged by Named Plaintiff in this litigation.

**22.    Incentive Award to Named Plaintiff.**

22.1.   Subject to Court approval, CookUnity shall pay Named Plaintiff an Incentive Award in the amount of Two Thousand Five Hundred Dollars and Zero Cents ($2,500.00).

22.2.   Named Plaintiff waives any right to an incentive award in connection with this matter which exceeds the amount provided in Section 22.1.

22.3.   CookUnity shall pay the Incentive Award provided in Section 22.1 within fourteen (14) days of the Effective Date by sending a business check or wire transfer payable to "EAST END TRIAL GROUP LLC IOLTA ATTORNEY TRUST ACCOUNT" to Class Counsel in care of Kevin W. Tucker, East End Trial Group LLC, at an address or account to be confirmed by Class Counsel before payment. Class Counsel shall confirm and provide proof in writing to CookUnity (through

CookUnity's counsel) that the Incentive Award provided in Section 22.1 has been paid to Named Plaintiff.

22.4.   The Incentive Award shall not be subject to withholding deductions and CookUnity may issue an IRS Form 1099 to Named Plaintiff, through Class Counsel at the address provided in Section 40.1.

## 23.   Annual Report and Meet-and-Confers.

23.1.   During the Agreement Term, on the Effective Date's anniversary date, CookUnity shall submit a report to Class Counsel, stating the status of the implementation of this Agreement and identifying any outstanding issues on which the Parties are then in disagreement.

23.2.   Within thirty (30) days of delivery of the Annual Report, Class Counsel may raise any issues regarding the Annual Report, if any, and CookUnity and/or its counsel will respond appropriately.

## 24.   Dispute Resolution Procedure. The Parties shall address disputes relating to any of the provisions of this Agreement as follows:

24.1.   Informal Dispute Resolution.

24.1.1.   If either Party believes a dispute exists relating to this Agreement, it shall notify the other Party in writing, describing the dispute. The other Party shall respond in writing to such notice within thirty (30) business days of receipt of the notice.

24.1.2.   If a Settlement Class Member believes a dispute exists relating to Sections 4 through 20 of this Agreement, he or she may notify Class Counsel who, in turn, shall notify CookUnity in writing, describing the dispute. CookUnity shall respond in writing to such notice within thirty (30) business days of receipt of the notice.

24.1.3.   Further, if CookUnity is informed of a dispute relating to Sections 4 through 20 of this Agreement by a Settlement Class Member, CookUnity shall notify Class Counsel in writing, describing the dispute and providing the Settlement Class Member's contact information, if known.

24.1.4.   Within thirty (30) business days of receipt of the response described in Sections 24.1.1, 24.1.2, or 24.1.3, counsel for the Parties shall meet-and-confer by telephone or in person and attempt to resolve

the issue(s) informally. The Parties may agree to enter mediation on the issue(s) in dispute. If one or both of the Parties fail to meet-and-confer in accordance with this Section 24.1.4, then the step provided in this Section 24.1.4 shall be deemed to have been completed.

24.2.  Submission to Mediation.

24.2.1.    In the event that the Parties are unable to resolve their dispute through the process set forth in Section 24.1, then within sixty (60) days of receipt of the notice of the dispute, the dispute shall be submitted to non-binding mediation before a mutually agreed-upon mediator in Pittsburgh, Pennsylvania or such other location as the Parties may mutually agree. The mediation may be conducted electronically or virtually.

24.3.  Submission to the Court.

24.3.1.    If the process set forth in Sections 24.1 and 24.2 of this Agreement do not result in a resolution of the dispute within a reasonable time, any Party may make a motion for resolution of the dispute by any United States District Court Judge who may be assigned to the case, provided that the Court had agreed to retain jurisdiction over the case.

24.3.2.    In the event that any Party finds it necessary to seek resolution of a dispute by the Court, the Court may award reasonable attorneys' fees and Costs incurred in pursuing dispute resolution as set forth in Section 24.3 in accordance with the prevailing party standards under the ADA.

## 25.  Attorneys' Fees and Costs.

25.1.  Subject to Court approval, CookUnity shall pay Named Plaintiff's Reasonable Attorneys' Fees and Costs incurred in connection with this matter in the amount of Forty-nine Thousand Dollars and Zero Cents ($49,000.00). East End Trial Group LLC shall provide CookUnity with a current W-9 and any further documentation or information necessary to allow it to meet its payment obligations herein. Under no circumstances shall CookUnity be required to pay any monetary amount under this Agreement in excess of the Incentive Award (Section 22.1) and Named Plaintiff's Reasonable Attorneys' Fees and Costs (Section 25.1), subject to Section 24.3.2 of this Agreement.

25.2.    Class Counsel and Named Plaintiff waives any right to reasonable attorneys' fees and Costs incurred in connection with this matter through the end of the Agreement Term that exceed the amount provided in Section 25.1, other than the right to any reasonable attorneys' fees and Costs awarded pursuant to Section 24.3.2 of this Agreement.

25.3.    CookUnity shall pay the amount provided in Section 25.1 within forty-five (45) days following Final Approval by sending a business check or wire transfer payable to "EAST END TRIAL GROUP LLC IOLTA ATTORNEY TRUST ACCOUNT" to Class Counsel in care of Kevin W. Tucker, East End Trial Group LLC, at an address or account to be confirmed by Class Counsel before payment.

**26.    Preliminary Approval, Objections, and Fairness Hearing.**

26.1.    Within fifteen (15) business days after execution of this Agreement, Named Plaintiff, through Class Counsel, shall request that the Court schedule a preliminary approval hearing within fourteen (14) days of the request, or as soon thereafter as the Court may set the hearing, and that the Court preliminarily approve this Agreement, and approve the proposed form of notice and plan for providing notice submitted by the Parties.

26.2.    Named Plaintiff shall ask the Court to schedule a final fairness hearing no less than ninety (90) days after the Notice Deadline set by the Court, or as soon thereafter as the Court may set the hearing.

26.3.    Named Plaintiff shall ask the Court to order the following procedures for objections: Settlement Class Members may object to the proposed Agreement by filing, within sixty (60) days after the Notice Deadline set by the Court, written objections with the Clerk of the Court. Only such objecting Settlement Class Members shall have the right, and only if they expressly seek it in their objections, to present objections at the fairness hearing. The Parties shall ensure that Settlement Class Members may participate in-person or by electronic conferencing (*e.g.*, Zoom). Appropriate Auxiliary Aids and Services necessary for effective communication (*e.g.*, captioning, audio descriptions, etc.) shall be provided pursuant to The Guide to Judiciary Policy, Vol. 5, § 255.40 (available at http://www.uscourts.gov/rules-policies/judiciary-policies/court-interpreting-guidance). Settlement Class Members may contact the Access Coordinator for the United States District Court for the Western District of Pennsylvania or Class Counsel for additional information. As of the date of this agreement, the Court's Access Coordinator is Mike Palus, who can be reached at the Joseph F. Weis, Jr. U.S. Courthouse, 700 Grant Street, Pittsburgh, PA 15219, (412) 208-7500. Settlement Class Members may find additional information regarding the Access Coordinator at

https://www.pawd.uscourts.gov/communication-access-coordinator.

26.4.   The Parties may respond to any timely-filed objections no less than five (5) days before the fairness hearing.

## 27.   Notice.

27.1.   As soon as practicable, but no later than twenty-one (21) days after the Court's entry of a Preliminary Approval order, CookUnity shall, at its expense:

27.1.1.   Add dates to the placeholders in the Long-Form Notice accompanying this Agreement as Exhibit 1.

27.1.2.   Ensure the Settlement Website is live and may be accessed over the internet. CookUnity shall further ensure the Settlement Website is Accessible; the Settlement Website tracks the number of visitors to the Settlement Website; and the Settlement Website remains published for at least 60 days after the date the Court grants final approval of the Settlement Agreement.

27.1.3.   Cause the Long-Form Notice to be published on, and make the following documents filed in the Lawsuit available for download on, the Settlement Website: the class action complaint, motion for preliminary approval of class action settlement and all supporting documents, and the Court's orders concerning preliminary approval as well as any supporting memorandum. CookUnity shall ensure the documents identified in this Section shall be fully accessible by individuals who use Appropriate Auxiliary Aids and Services.

27.1.4.   Display a link to the Settlement Website at the beginning of the Digital Properties' landing or home pages. CookUnity shall ensure this link directs individuals who are Blind and/or who have a Visual Disability to the Settlement Website, and shall have the option to make this link invisible to customers who are not Blind and who do not have a Visual Disability, provided that this link is otherwise Accessible. The link shall include alternative text which reads "Click to view our ADA class action settlement notice." CookUnity shall further ensure this link remains published for at least 60 days after the date the Court grants final approval of the Settlement Agreement.

27.1.5.   Cause a post in the form of Section 27.5 to be published on the

following social media accounts: https://www.instagram.com/cookunity, https://www.facebook.com/Cookunity.us, and https://x.com/Cookunity. CookUnity shall ensure these posts are fully accessible to individuals who use Appropriate Auxiliary Aids and Services. CookUnity shall further ensure these posts remain published during the Agreement Term.

27.1.6.    Publish a blog post on the Website in the form of the Long-Form Notice accompanying this Agreement as Exhibit 1. CookUnity shall ensure this post is fully accessible to individuals who use Appropriate Auxiliary Aids and Services. CookUnity shall maintain the blog post on its Website during the Agreement Term.

27.1.7.    Cause an email in the form of Section 27.6 to be sent to each subscriber of CookUnity's newsletter. The email's subject line shall read: "Our agreement to make CookUnity's store accessible to individuals who are blind or who have a visual disability". CookUnity shall ensure this email is fully accessible to individuals who use Appropriate Auxiliary Aids and Services.

27.2.    CookUnity shall ensure the documents identified in this Section shall be fully accessible by individuals who use Appropriate Auxiliary Aids and Services.

27.3.    No less than five (5) days before the fairness hearing, CookUnity shall file a declaration that all of the obligations of Sections 27.1 and 27.2 have been discharged.

27.4.    As soon as practicable, but no later than twenty-eight (28) days after the Court's entry of a Preliminary Approval order, Class Counsel shall, at its expense, request that at least the following organizations publish notice in the form of Section 27.6 in their respective electronic newsletters and social media accounts such that the notice is sent out within sixty (60) days of Preliminary Approval: ACHIEVA, American Action Fund for Blind Children and Adults, American Council of the Blind, American Foundation for the Blind, Blinded American Veterans Foundation, Blinded Veterans Association, Foundation Fighting Blindness, Pennsylvania Association for the Blind, Disability Law Center, Disability Rights Education and Defense Fund, and National Federation of the Blind.

27.5.    "Visit https://www.cookunityADAsettlement.com to learn more about CookUnity's agreement to make its online store accessible to individuals who are Blind and/or who have a Visual Disability."

27.6. "A proposed settlement has been reached that would resolve the class action lawsuit *Douglass v. CookUnity Inc.*, Case No. 2:25-cv-01270 (W.D. Pa.). The lawsuit alleges that CookUnity violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, by failing to take the necessary steps to ensure its website and mobile apps do not discriminate against individuals who are Blind and/or who have a Visual Disability. CookUnity strongly disagrees with the claims made in the lawsuit, but has agreed to settle this lawsuit to avoid additional cost and time with respect to the lawsuit. Under the settlement, CookUnity agrees to make its website and mobile apps accessible to individuals who are Blind and/or who have a Visual Disability. For a more complete summary of the terms of the proposed settlement, please visit https://www.cookunityADAsettlement.com."

## 28. Judgment, Final Approval, and Dismissal.

28.1. Named Plaintiff shall request that the Court enter a final judgment and order granting Final Approval of this Agreement and enjoining Settlement Class Members from asserting any Released Injunctive Claims. Among other things, the final judgment and order granting Final Approval of this Agreement shall attach this Agreement as an exhibit and shall provide that the Court retains jurisdiction through the Agreement Term in order to enforce this Agreement.

28.2. The Parties shall move to dismiss the Lawsuit with prejudice pursuant to Rule 41 of the Federal Rules of Civil Procedure no later than forty-five (45) days following the date of Final Approval and CookUnity's payment of fees pursuant to Section 25, whichever occurs later. Pursuant to *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994), the Parties' joint motion shall request that the Court's dismissal order expressly retain the Court's jurisdiction to interpret and enforce this Agreement against Named Plaintiff, CookUnity, and Settlement Class Members.

## 29. No Admission of Liability. By agreeing to and voluntarily entering into this Agreement, there is no admission or concession by CookUnity, direct or indirect, express or implied, that the Website is in any way inaccessible, or that CookUnity has violated the ADA or any other federal, state, or local law, code, regulation, order, or rule. Nothing in this Agreement shall operate as an admission by CookUnity in any context other than within the settlement of this Lawsuit that any particular standard or standards apply to the Website or other Digital Property under the ADA or any other federal or state law.

## 30. Terms Not Confidential; Non-Disparagement.

30.1. The terms of this Agreement are not confidential and will be publicly filed into the Court record of this Lawsuit.

30.2.   The Parties and their respective counsel, agents, and representatives agree not to make any disparaging remarks about the other Party and their respective counsel relating to this Agreement or the negotiations leading to it.

30.3.   Named Plaintiff and Class Counsel agree not to publish or redistribute any reports and communications provided by CookUnity and its affiliates under this Agreement. The Parties agree this Section shall not limit Named Plaintiff's reliance on or use of such information while utilizing the Alternative Dispute Resolutions procedures outlined in Section 24. This Section also shall not apply to the extent any other dispute arises concerning compliance with this Agreement.

31.   **Release.** Effective on the date of Final Approval, Named Plaintiff and Injunctive Releasing Parties unconditionally and forever fully and finally release, acquit, and discharge the CookUnity Parties from the Released Injunctive Claims. Pursuant to this release, Named Plaintiff and Settlement Class Members shall not bring any claims concerning the Accessibility of the Digital Properties during the Agreement Term. Notwithstanding this release, Named Plaintiff and Settlement Class Members may fully utilize the Dispute Resolution Procedure during the Agreement Term.

32.   **Entire Agreement.** This Agreement contains all the agreements, conditions, promises, and covenants among CookUnity, Named Plaintiff, Class Counsel, and the Settlement Class regarding matters set forth in this Agreement, and supersedes all prior or contemporaneous agreements, drafts, representations, or understandings, whether written or oral, with respect to the subject matter of this Agreement.

33.   **Amendment.** Prior to Final Approval, this Agreement can only be amended by written agreement of the Parties hereto. Following Final Approval, no amendment of this Agreement shall be effective unless such amendment is pursuant to Court order.

34.   **Severability.** If any provision or any part of this Agreement shall at any time be held unlawful, or inconsistent with applicable law, in whole or in part, under any federal, state, county, municipal, or other law, ruling, or regulation, then the remaining provisions of this Agreement shall remain effective and enforceable.

35.   **Drafting of this Agreement.** This Agreement is deemed to have been drafted by all Parties hereto, as a result of arm's length negotiations among the Parties. Whereas all Parties have contributed to the preparation of this Agreement, this Agreement shall not be construed more strictly against one Party than another.

36.   **Execution in Counterparts.** The Parties may execute this Agreement in counterparts, each of which shall constitute an original for all purposes, including any copies of the same, and all duplicate counterparts will be construed together and constitute one agreement. The

Parties will be bound by signatures on this document that are transmitted by hand delivery, mail, facsimile, electronic mail, or any other electronic means to the other Party or, if applicable, counsel for the other Party. Such signatures will have the same binding effect as any original signatures. A typed electronic signature will have the same effect as a handwritten signature.

37. **Authority.** The Parties stipulate that the signing individuals have authority to bind the entity that they are signing on behalf of.

38. **Continuing Jurisdiction.** The Parties agree that the Court shall have continuing jurisdiction throughout the Agreement Term to interpret and enforce this Agreement.

39. **Deadlines.** The Parties and the Court recognize that from time-to-time unforeseen events, such as exigent business circumstances, labor disputes, natural disasters, personnel issues, pandemics, and negotiations with third parties, cause delays in the accomplishment of objectives, no matter how well-intentioned and diligent the Parties may be. Accordingly, with regard to the provisions of this Agreement that require that certain acts be taken within specified periods, the Parties understand and agree that Court approval shall not be required for reasonable extensions of deadlines. In the event that any Party determines that an action required by this Agreement cannot be taken within the specified time period, that Party shall promptly notify the other Party that it anticipates a delay, state the reasons for the delay, and offer a proposed alternative deadline. The Parties shall endeavor to cooperate in reasonably rescheduling such deadlines. However, if the other Party does not agree to the proposed delay, the Parties shall submit the matter to the Dispute Resolution Procedure.

40. **Communications to Named Plaintiff, Class Counsel, the Settlement Class, and CookUnity.** All letters, notices, IRS Form 1099s, requests, demands, and other communications required or permitted to be given to the Parties pursuant to this Agreement shall be in writing, provided by electronic mail, facsimile, and/or next-day express delivery service, and addressed as follows.

40.1.  To Named Plaintiff, Class Counsel, or the Settlement Class:

Kevin W. Tucker (He/Him)
Kevin Abramowicz (He/Him)
Stephanie Moore (She/Her)
Chandler Steiger (She/Her)
Kayla Conahan (She/Her)
Jessica Liu (She/Her)
EAST END TRIAL GROUP LLC
6901 Lynn Way, Suite 503
Pittsburgh, PA 15208

www.eastendtrialgroup.com
ktucker@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com
smoore@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
kconahan@eastendtrialgroup.com
jliu@eastendtrialgroup.com
Tel. (412) 877-5220
Fax. (412) 626-7101

40.2.  To CookUnity:

CookUnity Inc.
630 Flushing Ave, 3rd Fl.
Brooklyn, NY 11206
Attn: Legal Department
legal@cookunity.com

With a copy to:

Cozen O'Connor
Attn: Michael C. Schmidt
3 World Trade Center
175 Greenwich Street – 55th Floor
New York, New York 10007
mschmidt@cozen.com
Tel. (212) 453-3937
Fax. (866) 736-3682

CookUnity may change the individual(s) to whom notices and communications required or permitted by this Agreement shall be sent by providing Class Counsel with written notification that it wishes to do so.

*[Signature block begins on the next page.]*

THE PARTIES EXECUTING THIS AGREEMENT BELOW INDIVIDUALLY ACKNOWLEDGE THAT EACH: HAS READ THIS AGREEMENT; UNDERSTANDS, ACCEPTS, AND AGREES TO ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT; AND EXECUTES THIS AGREEMENT VOLUNTARILY, WITH FULL UNDERSTANDING OF ITS CONSEQUENCES, AND WITHOUT DURESS OF ANY KIND.

**BLAIR DOUGLASS**

Dated: 09/04/2025                    By: *Blair Douglass*
                                         Blair Douglass (Sep 4, 2025 19:52:25 EDT)

**COOKUNITY INC.**

Dated: 2 September 2025              By: _____

                                    Name: James F. Cosgrove

                                    Its: Vice President & General Counsel

**APPROVED AS TO FORM AND CONTENT:**

COUNSEL FOR BLAIR DOUGLASS
AND THE SETTLEMENT CLASS                    COUNSEL FOR COOKUNITY INC.

By: _____                 By: _____  9/3/25

Kevin W. Tucker (He/Him)                     Michael C. Schmidt
Kevin Abramowicz (He/Him)                    COZEN O'CONNOR
Stephanie Moore (She/Her)                    3 World Trade Center
Chandler Steiger (She/Her)                   175 Greenwich Street – 55th Floor
Kayla Conahan (She/Her)                      New York, NY 10007
Jessica Liu (She/Her)                        (212) 453-3937
EAST END TRIAL GROUP LLC                     Fax (866) 736-3682
6901 Lynn Way, Suite 503
Pittsburgh, PA 15208
Tel. (412) 877-5220
ktucker@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com
smoore@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
kconahan@eastendtrialgroup.com
jliu@eastendtrialgroup.com

# Agreement Exhibit 1:
# Long-Form Notice

**NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION LAWSUIT**

**IF YOU ARE AN INDIVIDUAL WHO IS BLIND AND/OR HAS A VISUAL DISABILITY, YOUR LEGAL RIGHTS MAY BE AFFECTED. PLEASE READ THIS NOTICE AND THE INSTRUCTIONS CAREFULLY**

- This notice is to inform you about the proposed settlement that would resolve the class action lawsuit *Douglass v. CookUnity Inc.*, Case No. 2:25-cv-01270 (W.D. Pa.).

- The settlement covers all individuals who are blind and/or who have a visual disability who use auxiliary aids and services who have accessed, attempted to access, been deterred from accessing, will access, will attempt to access, or will be deterred from accessing: https://www.cookunity.com/.

- The class action lawsuit alleges that CookUnity Inc. ("CookUnity") violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, by failing to take the necessary steps to ensure its website and mobile applications do not discriminate against individuals who are blind and/or who have a visual disability who use auxiliary aids and services to access digital content.

- CookUnity denies all liability in the case and asserts that its current practices do not violate applicable federal, state, and local law.

- The settlement, which must be approved by the Court, would resolve the lawsuit.

- CookUnity has agreed to ensure its website and mobile applications meet the success criteria of the Web Content Accessibility Guidelines 2.1, at Levels A and AA (June 5, 2018), published by the World Wide Web Consortium, available at www.w3.org/TR/WCAG/ and to follow certain steps to ensure that its website and mobile applications becomes and remains accessible.

- You have the right to object to the settlement by DATE.

- The Court will hold a final hearing to determine whether to approve the settlement on DATE.

- Your legal rights are affected whether or not you act. Please read this Notice carefully.

## I.  WHAT IS THIS LAWSUIT ABOUT?

This case is a class action lawsuit. In a class action, one or more people sue on behalf of

others who have similar claims. The person that sues is the class representative. All of the people who have similar claims are part of a "class." Individual class members do not file lawsuits. Instead, a court resolves all of their claims at once.

This case is a class action that challenges the accessibility of: https://www.cookunity.com ("Website"). Plaintiff alleged that the Website was not accessible to persons with vision disabilities. Plaintiff alleged that this violated the Americans with Disabilities Act. Plaintiff sought an order to require CookUnity to make its online content accessible to persons with vision disabilities.

## II. WHO DOES THIS SETTLEMENT AFFECT?

This settlement covers all individuals who are blind and/or who have a visual disability who use auxiliary aids and services to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who will access, attempt to access, or be deterred from attempting to access https://www.cookunity.com from the United States.

## III. WHAT DOES THE SETTLEMENT PROVIDE?

### A. CookUnity Will Make Its Digital Properties Accessible.

Under the settlement, CookUnity agrees to take steps to make https://www.cookunity.com, and its current mobile applications, (collectively "Digital Properties") accessible to individuals who are blind and/or who have a visual disability and who use auxiliary aids and services to access digital content. CookUnity will ensure the Digital Properties meet the success criteria of the Web Content Accessibility Guidelines 2.1, at Levels A and AA (June 5, 2018), published by the World Wide Web Consortium, available at www.w3.org/TR/WCAG/ and to follow certain steps to ensure that its website becomes and remains accessible.

### B. CookUnity Will Institute Accessibility Procedures To Ensure Accessibility.

CookUnity will also incorporate detailed steps into its accessibility policies and practices to ensure its Digital Properties become and remain accessible to individuals who are blind and/or who have a visual disability and who use auxiliary aids and services to access digital content.

### C. CookUnity Will Create A Dispute Resolution Procedure To Address Accessibility Issues.

Additionally, CookUnity will forward any complaint or issue raised to its customer services regarding the accessibility of its Digital Properties to Class Counsel (defined below), who shall work with CookUnity to ensure the issue is resolved consistent with the proposed settlement. Class Counsel will monitor CookUnity's compliance with the settlement as well.

### D.    CookUnity Will Pay Class Co-Counsel's Attorneys' Fees And Costs.

The settlement also provides that the named individual plaintiff who served as class representative will receive a $2,500.00 incentive award, subject to court approval, in return for a release of his individual claims.

Finally, East End Trial Group LLC ("Class Counsel"), the attorneys who represent the class, will have the right to seek attorneys' fees and costs up to $49,000.00 for work performed up to CookUnity's deadline to makes its Digital Properties accessible. Class Counsel will file a motion asking the Court to award reasonable fees and costs to reimburse them for work they performed on this case. The Court must approve the amount awarded even if the parties reach an agreement on the amount. This motion for fees and costs will be available at https://www.cookunityADAsettlement.com within seven days after it is filed with the Court.

## IV. DOES THE SETTLEMENT AFFECT MY LEGAL RIGHTS?

All class members will be bound by the terms of the settlement relating to access to the Digital Properties for individuals who are blind and/or who have a visual disability and who use auxiliary aids and services to access digital content, if the settlement agreement is approved by the Court. If the settlement is approved, all class members will release and forever discharge all claims for injunctive relief under all federal, state, and local laws related to alleged discrimination by CookUnity against individuals who are blind and/or who have a visual disability and who use auxiliary aids and services to access digital content that arose before the Settlement Agreement becomes effective. Class members, other than the named plaintiff in the lawsuit, are not releasing any claims for monetary damages.

## V.   CAN I OBJECT TO THE SETTLEMENT?

You have the right to object to the proposed settlement agreement if you do not like part or all of it.

If you wish to object to the proposed settlement, you must do so in writing on or before DATE. Your written objections must:

   a)  clearly identify the case name and number, *Douglass v. CookUnity Inc.*, Case No. 2:25-cv-01270 (W.D. Pa.);

   b)  be submitted to the Court either by mailing them to the Clerk of the Court for the United States District Court for the Western District of Pennsylvania, 700 Grant Street, Courtroom 7A, Pittsburgh, PA 15219, or by filing them in person at any location of the United States District Court for the Western District of Pennsylvania;

c)  and be received on or before <mark>DATE</mark>.

If you wish to appear and present your objection orally at the fairness hearing, you must first submit a written objection and in your written objection you must indicate your intention to appear and be heard at the fairness hearing. If you appear through your own attorney, you are responsible for paying that attorney.

### VI. DO I HAVE A LAWYER IN THIS CASE?

The Court has appointed Kevin Tucker, Kevin Abramowicz, Stephanie Moore, Chandler Steiger, Kayla Conahan, and Jessica Liu of East End Trial Group as Lead Counsel ("Class Counsel") on behalf of the class members. Class Counsel's contact information can be found in Section 40.1 of the settlement agreement.

You do not need to hire a lawyer because Class Counsel is working on your behalf. You do not need to pay Class Counsel, as the settlement provides that CookUnity will pay their fees and costs in an amount approved by the Court.

### VII. WHEN AND WHERE WILL THE COURT APPROVE THE SETTLEMENT?

The Court will hold a hearing to decide whether to approve the settlement on <mark>DATE</mark>. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. You are not required to attend the final fairness hearing.

### VIII.  HOW DO I GET MORE INFORMATION ABOUT THE SETTLEMENT?

This notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the settlement agreement available at https://www.cookunityADAsettlement.com, contact Class Counsel using the information below, access the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.pawd.uscourts.gov, or visit the office of the Clerk of the Court for the United States District Court for the Western District of Pennsylvania, 700 Grant Street, Courtroom <mark>7A</mark>, Pittsburgh, PA 15219, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

To obtain a copy of this notice in alternate formats, contact Class Counsel using the information below.

## IX. CONTACT INFORMATION

Please do not contact the Court, the Court clerk's office, or Defense Counsel with questions about this settlement. Any questions must be directed to Class Counsel at the numbers and addresses below.

> Class Counsel:
> Kevin Tucker
> Kevin Abramowicz
> Stephanie Moore
> Chandler Steiger
> Kayla Conahan
> Jessica Liu
> EAST END TRIAL GROUP LLC
> 6901 Lynn Way, Suite 503
> Pittsburgh, PA 15208
> ktucker@eastendtrialgroup.com
> kabramowicz@eastendtrialgroup.com
> smoore@eastendtrialgroup.com
> csteiger@eastendtrialgroup.com
> kconahan@eastendtrialgroup.com
> jliu@eastendtrialgroup.com
> Tel. (412) 877-5220
> https://eastendtrialgroup.com/