IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH DIVISION

BLAIR DOUGLASS, on behalf of himself and all others similarly situated,

    Plaintiff,

    v.

COOKUNITY INC.,

    Defendant.

Case No. 2:25-cv-01270-DSC

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
TO CERTIFY CLASS FOR SETTLEMENT PURPOSES AND FOR
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

I.     INTRODUCTION  ........................................................................................... 1

II.    HISTORY OF THE LITIGATION  ................................................................. 1

III.   SUMMARY OF THE AGREEMENT  ............................................................ 2

       A.     Key Terms Used In The Agreement  .................................................. 2

       B.     Remediation Timeline .......................................................................... 2

       C.     Enjoining Settlement Class Members From Asserting Released Claims  ............. 4

       D.     Additional Obligations Of The Parties  ............................................ 5

              1.     Accessibility Training  ............................................................. 5

              2.     Defendant's Reporting Obligations  ...................................... 5

              3.     Plaintiff's Compliance Monitoring Obligations  .................. 6

              4.     Enforcement And Dispute Resolution  ................................... 6

       E.     Incentive Award For Plaintiff  .......................................................... 6

       F.     Attorneys' Fees And Costs  ................................................................ 6

IV.    LEGAL STANDARD ....................................................................................... 7

V.     ARGUMENT .................................................................................................... 7

       A.     The Court Should Certify The Class For Settlement Purposes ............ 7

              1.     Plaintiff Satisfies The Requirements Of Rule 23(a)  ............... 8

                     (i)     Numerosity  ................................................................. 8

                     (ii)    Commonality  .............................................................. 9

                     (iii)   Typicality  ................................................................... 10

                     (iv)    Adequacy  ................................................................... 11

              2.     Plaintiff Satisfies The Requirements Of Rule 23(b)(2)  ......... 11

       B.     The Agreement Is Fair, Reasonable, And Adequate, And Should Be
              Preliminarily Approved  ................................................................... 12

              1.     The Agreement Is Presumptively Fair  ................................... 13

|  |  | (i) | Negotiations Occurred At Arms' Length | 13 |
|  |  | (ii) | Robust Discovery Was Not Required Because The Accessibility Of Defendant's Website Was Obtained Independently | 14 |
|  |  | (iii) | Plaintiff And Plaintiff's Counsel Are Experienced In Similar Litigation | 14 |
|  |  | (iv) | Given The Terms, Plaintiff Anticipates No Objections | 14 |
|  | 2. | | The *Girsh* And *Prudential* Factors Favor Preliminary Approval | 15 |
|  |  | (i) | Complexity, Expense, And Likely Duration Of Litigation | 16 |
|  |  | (ii) | Reaction Of Class To Settlement | 16 |
|  |  | (iii) | Stage Of Proceedings And Discovery Completed | 16 |
|  |  | (iv) | Risks Of Establishing Liability And Damages | 17 |
|  |  | (v) | Risks Of Maintaining Class Action Through Trial | 17 |
|  |  | (vi) | Ability Of Defendant To Withstand Greater Judgment | 18 |
|  |  | (vii) | Range Of Reasonableness Of Settlement In Light Of Best Possible Recovery And All Attendant Risks Of Litigation | 18 |
|  |  | (viii) | *Prudential* Factors | 19 |
| C. | | | The Proposed Notice And Notice Plan Satisfy The Requirements Of Rule 23(e) And Due Process | 19 |
| VI. | | | CONCLUSION | 20 |

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................. 13

*Arnold v. United Artists Theatre Circuit, Inc.*,
158 F.R.D. 439 (N.D. Cal. 1994) ......................................................... 8

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994) .................................................. 9, 10, 11, 12

*Cureton v. NCAA*, No. 97-cv-00131,
1999 U.S. Dist. LEXIS 9706 (E.D. Pa. July 1, 1999) ........................... 8

*Douglass v. iFit Inc.*, No. 23-cv-00917,
2024 U.S. Dist. LEXIS 243178 (W.D. Pa. Apr. 11, 2024) ............ *passim*

*Douglass v. Mondelēz Global LLC*, No. 22-cv-00875,
2023 U.S. Dist. LEXIS 246839 (W.D. Pa. Sept. 19, 2023) ........... *passim*

*Douglass v. Optavia, LLC*, No. 22-cv-00594,
2023 U.S. Dist. LEXIS 246835 (W.D. Pa. Jan. 23, 2023) ............ *passim*

*Douglass v. P.C. Richard & Son, LLC*, No. 22-cv-00399,
2023 U.S. Dist. LEXIS 246830 (W.D. Pa. June 27, 2023) ........... *passim*

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) ................................................................. 15

*Hassine v. Jeffes*,
846 F.2d 169 (3d Cir. 1988) ................................................................. 11

*In re Baby Prods. Antitrust Litig.*,
708 F.3d 163 (3d Cir. 2013) .................................................. 15, 16, 20

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019) ................................................................. 13

*In re NFL Players Concussion Inj. Litig.*,
821 F.3d 410 (3d Cir. 2016) ........................................................ *passim*

*In re NFL Players' Concussion Inj. Litig.*,
961 F. Supp. 2d 708 (E.D. Pa. 2014) ................................................... 7

*In re Pet Food Prods. Liability Litig.*,
    629 F.3d 333 (3d Cir. 2010) ............................................. 15

*In re Processed Egg Prods. Antitrust Litig.*,
    302 F.R.D. 339 (E.D. Pa. 2014) ......................................... 20

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) .......................... 13, 15, 19, 20

*In re Prudential Ins. Co. Of Am. Sales Practice Litig.*,
    261 F.3d 355 (3d Cir. 2001) ............................................... 4

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ............................................... 7

*Kaplan v. Chertoff*, No. 06-cv-05304,
    2008 U.S. Dist. LEXIS 5082 (E.D. Pa. Jan. 24, 2008) ................. 19, 20

*Kokkonen v. Guardian Life Ins. Co. Of Am.*,
    511 U.S. 375 (1994) ............................................................ 6

*Kyriazi v. W. Elec. Co.*,
    647 F.2d 388 (3d Cir. 1981) ............................................. 19

*Metts v. Houstoun*, No. 97-cv-04123,
    1997 U.S. Dist. LEXIS 16737 (E.D. Pa. Oct. 24, 1997) ................ 11

*Murphy v. Charles Tyrwhitt, Inc.*, No. 20-cv-00056,
    2022 U.S. Dist. LEXIS 255976 (W.D. Pa. Feb. 16, 2022) .......... *passim*

*Murphy v. Eyebobs, LLC*, No. 21-cv-00017,
    2022 U.S. Dist. LEXIS 255978 (W.D. Pa. Feb. 9, 2022) ............ *passim*

*Murphy v. The Hundreds Is Huge, Inc.*, No. 21-cv-00204,
    2022 U.S. Dist. LEXIS 211942 (W.D. Pa. Nov. 17, 2022) ......... *passim*

*Snider v. Upjohn Co.*,
    115 F.R.D. 536 (E.D. Pa. 1987) ......................................... 8

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) ......................................... 8, 10

*Walsh v. Great Atl. & Pac. Tea Co.*,
    726 F.2d 956 (3d Cir. 1983) ............................................. 12

**Rules**

Fed. R. Civ. P. 23(a)(1) ............................................................................... 8

Fed. R. Civ. P. 23(a)(2) ............................................................................... 9

Fed. R. Civ. P. 23(a)(3) ............................................................................... 10

Fed. R. Civ. P. 23(a)(4) ............................................................................... 11

Fed. R. Civ. P. 23(b)(2) ........................................................................... 11, 12

Fed. R. Civ. P. 23(c)(2) ............................................................................... 19

Fed. R. Civ. P. 23(e) ........................................................................... 7, 12, 19

**Other Authorities**

*Internet, Broadband Fact Sheet*, Pew Research Center (Nov. 13, 2024),
https://www.pewresearch.org/internet/fact-sheet/internet-broadband/ ......................... 8

Manual for Complex Litigation (Fourth) § 21.61 (2004) ............................................ 7

Matthew W. Brault, *Americans With Disabilities: 2010*, U.S. Census Bureau (July 2012),
https://www2.census.gov/library/publications/2012/demo/p70-131.pdf ....................... 8

William B. Rubenstein, 3 *Newberg on Class Actions* § 8:15 (6th ed. 2022) .............................. 19

## I.    INTRODUCTION

Plaintiff submits this Memorandum in Support of his Motion to Certify Class for Settlement Purposes and for Preliminary Approval of Class Action Settlement. The Agreement, *see* Ex. 1, resolves this suit against CookUnity Inc. ("CookUnity"). It is fair and reasonable, and provides substantial benefits to the class, while avoiding the delay, risk, and cost of litigation. It is on par with agreements that courts in this District finally approved in *Douglass v. iFit Inc.*, No. 23-cv-00917, 2024 U.S. Dist. LEXIS 243178 (W.D. Pa. Apr. 11, 2024) (Horan, J.) ("*iFit*"); *Douglass v. Mondelēz Global LLC*, No. 22-cv-00875, 2023 U.S. Dist. LEXIS 246839 (W.D. Pa. Sept. 19, 2023) (Hardy, J.) ("*Mondelēz*"); *Murphy v. Le Sportsac, Inc.*, No. 22-cv-00058, Doc. 57 (W.D. Pa. July 6, 2023) (Lanzillo, J.) ("*Le Sportsac*"); *Douglass v. P.C. Richard & Son, LLC*, No. 22-cv-00399, 2023 U.S. Dist. LEXIS 246830 (W.D. Pa. June 27, 2023) (Kelly, J.) ("*P.C. Richard*"); *Douglass v. Optavia, LLC*, No. 22-cv-00594, 2023 U.S. Dist. LEXIS 246835 (W.D. Pa. Jan. 23, 2023) (Wiegand, J.) ("*Optavia*"); *Murphy v. The Hundreds Is Huge, Inc.*, No. 21-cv-00204, 2022 U.S. Dist. LEXIS 211942 (W.D. Pa. Nov. 17, 2022) (Lanzillo, J.) ("*The Hundreds*"); *Murphy v. Charles Tyrwhitt, Inc.*, No. 20-cv-00056, 2022 U.S. Dist. LEXIS 255976 (W.D. Pa. Feb. 16, 2022) (Baxter, J.) ("*Charles Tyrwhitt*"); and *Murphy v. Eyebobs, LLC*, No. 21-cv-00017, 2022 U.S. Dist. LEXIS 255978 (W.D. Pa. Feb. 9, 2022) (Lanzillo, J.) ("*Eyebobs*").

## II.    HISTORY OF THE LITIGATION

In January 2024, Plaintiff attempted to access Defendant's online store, located at https://www.cookunity.com/ (the "Website"). Doc. 1, ¶¶ 3, 37. Plaintiff could not access the store because it was not compatible with screen reader auxiliary aids. *Id.*, ¶¶ 21, 39, 45-46. Plaintiff returned to the Website and found that it still denied him full and equal access. Doc. 1, ¶¶ 39-40. On August 19, 2025, Plaintiff filed a class action complaint seeking declaratory and injunctive relief, alleging Defendant does not have, and has never had, adequate policies and practices to

cause the Website to be accessible to blind persons, in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq*., and regulations ("ADA"). Doc. 1.

## III.    SUMMARY OF THE AGREEMENT

Plaintiff brought this action to ensure that blind individuals have equal access to the goods and services that Defendant makes available via its Website. The relief afforded by the Agreement achieves that goal and more. A description of its key provisions follows.

### A.    Key Terms Used In The Agreement

The Agreement defines "Website" as the digital property located at https://www.cookunity.com/, and "Digital Properties" as including the "Website" and "Mobile Applications." Ex. 1, §§ 2.49, 2.32.

"Settlement Class" means "a national class of individuals who are Blind and/or who have a Visual Disability and who use Appropriate Auxiliary Aids and Services to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who will access, attempt to access, or be deterred from attempting to access, the Website from the United States." Ex. 1, § 2.43.

The Agreement defines "Accessible" with reference to the Web Content Accessibility Guidelines ("WCAG") 2.1. A/AA. Ex. 1, §§ 2.8, 2.48. The WCAG are based on four general principles—that digital content be perceivable, operable, understandable, and robust. The Department of Justice and National Federation of the Blind rely on the WCAG to resolve enforcement actions akin to Plaintiff's claims.

"Agreement Term" means the time from the "Effective Date" through the end of one (1) year from the "Effective Date." Ex. 1, §§ 2.11, 2.25, 3.

### B.    Remediation Timeline

Defendant must ensure the U.S. portions of the Website are Accessible by the end of the

Agreement Term. Ex. 1, § 4. Defendant must meet various other benchmarks during the Agreement Term, which ensures Defendant does not delay its remediation efforts. They include:

| Time from Effective Date | Benchmark | Section(s) of Settlement Agreement |
|---|---|---|
| 6 Months | Retain the Accessibility Consultant | 8.1 |
| Prior to developing the Accessibility Strategy | Complete Initial Accessibility Audit | 9.1 |
| 12 Months | Develop the Accessibility Strategy | 10.1 |
| 9 months | Develop the Accessibility Statement | 11.1 |
| 9 Months | Add link at the beginning of the Digital Properties directing screen reader users to the Accessibility Statement | 11.6 |
| 12 Months | Complete Accessibility Training | 12.1 |
| 12 Months | Modify existing bug fix policies, practices, and procedures to include the elimination of bugs that create Accessibility barriers | 14.1 |
| 12 Months | Provide support during business hours to assist Blind or Visually Disabled persons with resolving Accessibility issues regarding the Digital Properties | 15 |

The Agreement includes other obligations to which Defendant must adhere immediately:

| Time from Effective Date | Benchmark | Section(s) of Settlement Agreement |
|---|---|---|
| Immediately | Request that vendors provide Third-Party Content that is Accessible | 6.2 |
| Immediately | Provide Accessibility training to all newly-hired employees within the latter of 12 months of the Effective Date or 180 days of the date they are hired | 12.2 |
| Immediately | Complete Customer Service Training | 13 |
| Immediately | Perform Semi-Annual Automated Accessibility Audits to evaluate whether the Digital Properties are Accessible | 16.1 |
| Immediately | Perform Annual End-User Accessibility Testing to evaluate whether the Digital Properties are Accessible | 17.1 |

| Commencing in 2026 | Provide refresher Accessibility training to all then-current employees responsible for website or mobile application design, development, or maintenance at regular intervals that shall not exceed 2 years | 12.3 |
|---|---|---|

### C.    Enjoining Settlement Class Members From Asserting Released Claims

The Agreement obliges Plaintiff to request that the Court enjoin Settlement Class Members from bringing any "Released Injunctive Claims." Ex. 1, § 28.1. This term is defined as:

> Any and all claims, rights, demands, charges, complaints, actions, suits, and causes of action, whether known or unknown, suspected or unsuspected, accrued or unaccrued, for injunctive, declaratory, or non-monetary relief, based on the Accessibility of the Digital Properties to individuals who are Blind and/or who have a Visual Disability, including any injunctive, declaratory, or non-monetary claims under: (i) the ADA; and (ii) any state or local statutory, administrative, regulatory, or code provisions that either (a) directly incorporate the ADA or (b) set forth standards or obligations coterminous with or equivalent to the ADA.

*Id.*, § 2.41. The Released Injunctive Claims "cover all conduct concerning the Accessibility of the Digital Properties through the Agreement Term." *Id.*

This request is consistent with the agreements approved in *Eyebobs* (Doc. 49 at Ex. A, §§ 2.35, 28.1), *Charles Tyrwhitt* (Doc. 47-1 at §§ 2.32, 26.1), *The Hundreds* (Doc. 41 at Ex. A, §§ 2.35, 29.1), *Optavia* (Doc. 12-1 at §§ 2.38, 28.1), *P.C. Richard* (Doc. 31-1 at §§ 2.41, 29.1), *Le Sportsac* (Doc. 36-1 at §§ 2.33, 28.1), *Mondelēz* (Doc. 12-1 at §§ 2.34, 26.1), and *iFit* (Doc. 18-1 at §§ 2.36, 24.1).

The Court should enjoin the pursuit of released claims upon final approval since doing so is "necessary or appropriate in aid of [its] jurisdiction[]" and "serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent re-litigation of settled questions at the core of a class action." *In re Prudential Ins. Co. Of Am. Sales Prac. Litig.*, 261 F.3d 355, 365-66 (3d Cir. 2001) (quotations and citations omitted).

4

### D.    Additional Obligations Of The Parties

#### 1.    Accessibility Training

Defendant is required to train all employees responsible for website or mobile application design, development, or maintenance to ensure the future design, development, and maintenance of the Digital Properties are and remain Accessible. Ex. 1, § 12.1.

#### 2.    Defendant's Reporting Obligations

To help ensure compliance with the Agreement, the Agreement requires periodic reporting by Defendant to class counsel. Below is a summary of these reporting obligations.

| Information | Deadline | Section(s) of Settlement Agreement |
|---|---|---|
| Confirmation of Defendant's designation of Accessibility Coordinator | Upon designation | 7.1 |
| Selection of Accessibility Consultant | Within 6 months of Effective Date | 8.1 |
| Accessibility Consultant's Letter of Accessibility and Status Report | To be included as exhibits to Annual Report | 8.4 |
| Changes to Accessibility Consultant | Upon change | 8.5 |
| Results of Initial Accessibility Audit | To be included as exhibit to Annual Report | 9.3 |
| Copy of Accessibility Strategy | Within 12 months of Effective Date | 10.3 |
| Copy of Accessibility Statement | Within 9 months of Effective Date | 11.5 |
| Status of Accessibility Statement and copy of Accessibility Feedback Form Log | To be included in Annual Report | 11.7 |
| Modified Bug Fix Priority | To be included as exhibit to Second Annual Report | 14.3 |
| Results of Semi-Annual Automated Accessibility Audits | To be included in proceeding Annual Report | 16.2 |

| Results of Annual End-User Accessibility Testing | To be included in proceeding Annual Report | 17.2 |
|---|---|---|
| Retain copies of Accessibility Feedback Form Log | At least 6 months after Annual Report in which they are logged | 19.2 |
| Annual Report | On anniversary of Effective Date during Agreement Term | 23.1 |

### 3. Plaintiff's Compliance Monitoring Obligations

Plaintiff is entitled to visit the Digital Properties at any time, without notice to Defendant, for the purpose of evaluating Defendant's compliance with Sections 4 through 18 of the Agreement. Ex. 1, § 19.1.

### 4. Enforcement And Dispute Resolution

While the parties will move to dismiss this action with prejudice under Fed. R. Civ. P. 41, they request that the Court's dismissal order retain the Court's jurisdiction to enforce the Agreement pursuant to *Kokkonen v. Guardian Life Ins. Co. Of Am.*, 511 U.S. 375 (1994). Ex. 1, § 28.2. The parties must meet and confer about any disputes relating to the terms of the Agreement and, if unsuccessful, attend mediation before submitting any dispute to the Court. *Id.*, § 24.

### E. Incentive Award For Plaintiff

If approved, Defendant will pay an incentive award of $2,500.00 to Plaintiff. Ex. 1, § 22.1. Plaintiff has waived any right to an incentive award in connection with this matter that exceeds $2,500.00. *Id.*, § 22.2. *See Jahoda v. Redbox Automated Retail, Inc.*, No. 2:14-cv-01278, Docs. 73, p.7; 80 (W.D. Pa. Oct. 31, 2017) (approving $5,000.00 incentive awards to the class representatives as part of class action settlement resolving nationwide ADA claims); *Dieter v. Aldi, Inc.*, No. 2:18-cv-00846, Docs. 60, p.7; 63 (W.D. Pa. Aug. 29, 2019) (same).

### F. Attorneys' Fees And Costs

If approved by the Court, Defendant will pay Plaintiff's attorneys' fees and costs incurred in connection with this matter up to $49,000.00. Ex. 1, § 25. A forthcoming fee petition will

provide an overview of Plaintiff's fees expended and costs incurred in this litigation.

## IV.    LEGAL STANDARD

"The claims . . . of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval," which can be granted "only on finding that [the proposed settlement] is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e). "[P]reliminary approval is not simply a judicial 'rubber stamp' of the parties' agreement." *In re NFL Players' Concussion Inj. Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014). "Judicial review must be exacting and thorough . . . because the adversariness of litigation is often lost after the agreement to settle." *Id.* at 714-15 (quoting Manual for Complex Litigation (Fourth) § 21.61 (2004)). "In cases such as this, where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously, . . . courts [must] be even 'more scrupulous than usual' when examining the fairness of the proposed settlement." *Id.* at 715 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004)).

## V.    ARGUMENT

To approve a class settlement, a court must find that: (A) the class should be certified for settlement purposes; (B) the settlement is fair, reasonable, and adequate; and (C) the notice and notice plan meet due process requirements. All of these requirements are met. Thus, Plaintiff's request for class certification and preliminary approval should be granted.

### A.    The Court Should Certify The Class For Settlement Purposes

Plaintiff seeks certification of the following Settlement Class:

[A] national class of individuals who are Blind and/or who have a Visual Disability and who use Appropriate Auxiliary Aids and Services to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who will access, attempt to access, or be deterred from attempting to access, the Website from the United States.

Ex. 1, § 2.43. The Settlement Class meets the requirements of Rule 23(a) and Rule 23(b)(2).

      **1.**      **Plaintiff Satisfies The Requirements Of Rule 23(a)**

      **(i)**      **Numerosity**

The Court must find "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Impracticability does not mean impossibility; it means class certification is proper in light of the difficulty of joining all members of the putative class. *Cureton v. NCAA*, No. 97-cv-00131, 1999 U.S. Dist. LEXIS 9706, at *15 (E.D. Pa. July 1, 1999). The inquiry is focused on judicial economy. While there is no precise standard, a class of more than 40 individuals typically satisfies the requirement. *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). General knowledge and "common sense assumptions" may be applied to the numerosity determination. *See Snider v. Upjohn Co.*, 115 F.R.D. 536, 539 (E.D. Pa. 1987).

The numerosity requirement is satisfied, based on common sense and data regarding the number of individuals in the U.S. who are visually disabled and who use the internet. First, U.S. Census Bureau data from 2010 shows that "[a]bout 8.1 million people . . . had difficulty seeing, including 2.0 million people who were blind or unable to see." Matthew W. Brault, *Americans With Disabilities: 2010*, U.S. Census Bureau (July 2012), https://www2.census.gov/library/publications/2012/demo/p70-131.pdf. Second, about 96% of U.S. adults use the internet. *Internet, Broadband Fact Sheet*, Pew Research Center (Nov. 13, 2024), https://www.pewresearch.org/internet/fact-sheet/internet-broadband/. Together, about 7.8 million U.S. adults who have difficulty seeing, including about 1.9 million U.S. adults who are blind, use the internet. Considering the number of visually disabled internet users who may seek to access the Website, the numerosity requirement is met. *See Arnold v. United Artists Theatre Cir., Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994) (extrapolating from evidence of existence of over 175,000 wheelchair users and 700,000 semi-ambulatory persons in California that thousands of

disabled individuals were affected by access violations at defendant's 70 theatres).

Courts found that identical classes satisfied numerosity in *iFit*, 2024 U.S. Dist. LEXIS 243178, at *4; *Mondelēz*, 2023 U.S. Dist. LEXIS 246839, at *3-4; *Le Sportsac*, No. 22-cv-00058, Doc. 57, at ¶ 6; *P.C. Richard*, 2023 U.S. Dist. LEXIS 246830, at *4; *Optavia*, 2023 U.S. Dist. LEXIS 246835, at *4; *The Hundreds*, 2022 U.S. Dist. LEXIS 211942, at *4; *Charles Tyrwhitt*, 2022 U.S. Dist. LEXIS 255976, at *4; and *Eyebobs*, 2022 U.S. Dist. LEXIS 255978, at *4. This Court should too.

### (ii) Commonality

The Court must find "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In cases seeking injunctive relief, "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. . . . Because the requirement may be satisfied by a single common issue, it is easily met[.]" *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Further, "because they do not also involve an individualized inquiry for the determination of damage awards, injunctive actions by their very nature often present common questions satisfying Rule 23(a)(2)." *Id.* at 57 (quotations omitted).

The commonality requirement is satisfied. There are numerous issues common to Plaintiff and the Settlement Class, like: whether they have been, are being, or will be denied full and equal access to, and use and enjoyment of, Defendant's Website due to Defendant's failure to make it equally accessible to and useable by individuals who use screen reader auxiliary aids to access digital content. *See Baby Neal*, 43 F.3d at 60-62 (finding common issues).

Courts found that identical classes satisfied commonality in *iFit*, 2024 U.S. Dist. LEXIS 243178, at *4; *Mondelēz*, 2023 U.S. Dist. LEXIS 246839, at *3-4; *Le Sportsac*, No. 22-cv-00058, Doc. 57, at ¶ 6; *P.C. Richard*, 2023 U.S. Dist. LEXIS 246830, at *4; *Optavia*, 2023 U.S. Dist. LEXIS 246835, at *4; *The Hundreds*, 2022 U.S. Dist. LEXIS 211942, at *4; *Charles Tyrwhitt*,

2022 U.S. Dist. LEXIS 255976, at *4; and *Eyebobs*, 2022 U.S. Dist. LEXIS 255978, at *4. This Court should too.

### (iii)    Typicality

The Court must find the plaintiff's claims are typical of the class members' claims. Fed. R. Civ. P. 23(a)(3). "Typicality entails an inquiry [into] whether 'the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'" *Baby Neal*, 43 F.3d at 57-58. "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims. . . . Actions requesting declaratory and injunctive relief to remedy conduct directed at the class clearly fit this mold." *Id.* at 58.

The typicality requirement is satisfied. Plaintiff's and the Settlement Class Members' claims are typical since both arise from the same practices and are based on the same theory: that Defendant failed to make its Website accessible to individuals who have a visual disability. *Id.*; *see also Stewart*, 275 F.3d at 227-28. Because the claims are "framed as a violative practice" and seek to remedy injuries linked to this practice, they "occupy the same position of centrality for all class members." *Baby Neal*, 43 F.3d at 63. The typicality requirement is met.

Courts found that identical classes satisfied typicality in *iFit*, 2024 U.S. Dist. LEXIS 243178, at *4; *Mondelēz*, 2023 U.S. Dist. LEXIS 246839, at *3-4; *Le Sportsac*, No. 22-cv-00058, Doc. 57, at ¶ 6; *P.C. Richard*, 2023 U.S. Dist. LEXIS 246830, at *4; *Optavia*, 2023 U.S. Dist. LEXIS 246835, at *4; *The Hundreds*, 2022 U.S. Dist. LEXIS 211942, at *4; *Charles Tyrwhitt*, 2022 U.S. Dist. LEXIS 255976, at *4; and *Eyebobs*, 2022 U.S. Dist. LEXIS 255978, at *4. This Court should too.

### (iv)    Adequacy

The Court must find "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is met where the plaintiff's interests are not antagonistic to the class members' interests, and counsel for the plaintiff is experienced and qualified to conduct the litigation. *Baby Neal*, 43 F.3d at 55.

Plaintiff will protect the interests of the class. Plaintiff and the Settlement Class Members share the same injuries and seek the same relief—access to Defendant's Website. *Metts v. Houstoun*, No. 97-cv-04123, 1997 U.S. Dist. LEXIS 16737, at *11 (E.D. Pa. Oct. 24, 1997) (quoting *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988)) ("Because the plaintiffs seek the same injunctive relief as all members of the class, the court 'can find no potential for conflict between the claims of the complainants and those of the class as a whole.'").

Plaintiff retained experienced and competent counsel who will protect the interests of the class. Counsel have experience litigating class actions, generally, and prosecuting ADA claims, specifically.[1] Courts have found attorneys Tucker, Abramowicz, Steiger, and Moore adequately represented similar classes in *iFit*, 2024 U.S. Dist. LEXIS 243178, at *4; *Mondelēz*, 2023 U.S. Dist. LEXIS 246839, at *4; *Le Sportsac*, No. 22-cv-00058, Doc. 57, at ¶ 8; *P.C. Richard*, 2023 U.S. Dist. LEXIS 246830, at *4-5; *Optavia*, 2023 U.S. Dist. LEXIS 246835, at *4; *The Hundreds*, 2022 U.S. Dist. LEXIS 211942, at *4-5; *Charles Tyrwhitt*, 2022 U.S. Dist. LEXIS 255976, at *4-5; and *Eyebobs*, 2022 U.S. Dist. LEXIS 255978, at *4. This Court should too.

### 2.    Plaintiff Satisfies The Requirements Of Rule 23(b)(2)

Plaintiff seeks injunctive relief under Rule 23(b)(2). A class may be certified under Rule 23(b)(2) if Rule 23(a)'s prerequisites are met and "the party opposing the class has acted or refused

---

[1] Plaintiff's counsel's resumes are attached to Plaintiff's motion as Exhibit 3.

to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Because relief under Rule 23(b)(2) is "cohesive in nature," a plaintiff "can, as a matter of due process, bind all absent class members by a judgment." *Walsh v. Great Atl. & Pac. Tea Co*., 726 F.2d 956, 963 (3d Cir. 1983). Rule 23(b)(2) cases"frequently [serve] as the vehicle for civil rights actions and other institutional reform cases[.]" *Baby Neal*, 43 F.3d at 58-59.

Certification under Rule 23(b)(2) is appropriate. This case concerns a single, common contention: that Defendant failed to provide equal, effective, and full access to its online store to blind people who use screen readers. By failing to develop and maintain the Website to be compatible with such software, Defendant acted or refused to act on grounds generally applicable to the Settlement Class. The injunctive relief that Plaintiff seeks—changes to Defendant's policies and practices—is sought to benefit, and indeed will benefit, the Settlement Class as a whole. Moreover, courts have found certification of similar classes to be appropriate under Rule 23(b)(2) in *iFit*, 2024 U.S. Dist. LEXIS 243178, at *4; *Mondelēz*, 2023 U.S. Dist. LEXIS 246839, at *3-4; *Le Sportsac*, No. 22-cv-00058, Doc. 57, at ¶ 6; *P.C. Richard*, 2023 U.S. Dist. LEXIS 246830, at *4; *Optavia*, 2023 U.S. Dist. LEXIS 246835, at *4; *The Hundreds*, 2022 U.S. Dist. LEXIS 211942, at *4; *Charles Tyrwhitt*, 2022 U.S. Dist. LEXIS 255976, at *4; and *Eyebobs*, 2022 U.S. Dist. LEXIS 255978, at *4. Class certification under Rule 23(b)(2) is proper.

**B.    The Agreement Is Fair, Reasonable, And Adequate, And Should Be Preliminarily Approved**

A class action can be settled only with court approval based on a finding that the settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e). The fairness inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their

individual claims by a compromise." *In re NFL Players Concussion Inj. Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). "In cases of settlement classes, where district courts are certifying a class and approving a settlement in tandem, they should be 'even more scrupulous than usual when examining the fairness of the proposed settlement.'" *Id*. Still, "whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998) ("*Prudential*").

### 1.    The Agreement Is Presumptively Fair

Courts "apply an initial presumption of fairness in reviewing a class settlement when: '(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re NFL Players Concussion Inj. Litig.*, 821 F.3d at 436.

### (i)    Negotiations Occurred At Arms' Length

The parties devoted months to resolving Plaintiff's claims. Plaintiff's counsel drew upon their experience resolving similar claims to achieve a resolution that is comparable to the obligations contained in the class settlements finally approved in *Eyebobs*, *Charles Tyrwhitt*, *The Hundreds*, *Optavia*, *P.C. Richard*, *Le Sportsac*, *Mondelēz*, and *iFit*. Moreover, negotiation of the material terms of the Agreement was conducted without regard to the payment of Plaintiff's attorneys' fees and costs. In other words, Plaintiff did not bargain away the right to pursue injunctive relief to receive greater fees—as demonstrated by the comprehensive obligations the Agreement contains. The Court should not "intrude overly on the parties' hard-fought bargain." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 326 (3d Cir. 2019).

13

### (ii) Robust Discovery Was Not Required Because The Accessibility Of Defendant's Website Was Obtained Independently

Plaintiff conducted multiple rounds of end-user reviews to determine whether the Website is fully and equally accessible to blind consumers. From these reviews, Plaintiff determined the Website is not accessible to him and the class. Plaintiff does not require additional discovery to determine whether the Website is accessible—it's not—or whether Defendant's current policies and practices are sufficient—they're not. While burdensome discovery would have generated greater fees for Plaintiff's counsel, it would not have secured any better relief. And, as described herein, the injunctive relief Plaintiff obtained on behalf of himself and the class exceeds or is comparable to the relief contained in the settlements approved in *Eyebobs*, *Charles Tyrwhitt*, *The Hundreds*, *Optavia*, *P.C. Richard*, *Le Sportsac*, *Mondelēz*, and *iFit*.

### (iii) Plaintiff And Plaintiff's Counsel Are Experienced In Similar Litigation

Plaintiff retained experienced and competent counsel who fairly and adequately protected the interests of the Settlement Class since before the litigation of the case and during the negotiation of the Agreement. Plaintiff's counsel have many years of experience prosecuting class and civil rights litigation, generally, and digital accessibility claims, in particular. Plaintiff's counsel are sufficiently experienced in similar litigation.

### (iv) Given The Terms, Plaintiff Anticipates No Objections

Plaintiff does not anticipate objectors as the relief included in the Agreement exceeds or is comparable to the relief achieved in the settlements approved in *Eyebobs*, *Charles Tyrwhitt*, *The Hundreds*, *Optavia*, *P.C. Richard*, *Le Sportsac*, *Mondelēz*, and *iFit*. *See Eyebobs*, Doc. 49 at Ex. A; *Charles Tyrwhitt*, Doc. 47-1; *The Hundreds*, Doc. 41 at Ex. A; *Optavia*, Doc. 12-1; *P.C. Richard*, Doc. 31-1; *Le Sportsac*, Doc. 36-1; *Mondelēz*, Doc. 12-1; and *iFit*, Doc. 18-1; and in

similar cases brought by DOJ and National Federation of the Blind.

###    2.    The *Girsh* And *Prudential* Factors Favor Preliminary Approval

In *Girsh v. Jepson*, the Third Circuit identified nine considerations when assessing the

fairness of a proposed class settlement:

> (1) the complexity, expense and likely duration of the litigation[;] (2) the reaction
> of the class to the settlement[;] (3) the stage of the proceedings and the amount of
> discovery completed[;] (4) the risks of establishing liability[;] (5) the risks of
> establishing damages[;] (6) the risks of maintaining the class action through the
> trial[;] (7) the ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement fund in light of the best possible
> recovery[;] [and] (9) the range of reasonableness of the settlement fund to a possible
> recovery in light of all the attendant risks of litigation.

521 F.2d 153, 156-57 (3d Cir. 1975). The settling parties must prove that "the *Girsh* factors weigh

in favor of approval of the settlement." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d

Cir. 2010). "A district court's findings under the *Girsh* test are those of fact. Unless clearly

erroneous, they are upheld." *In re NFL Players Concussion Inj. Litig.*, 821 F.3d at 437.

Later, in *Prudential*, the Third Circuit held that, because of "a sea-change in the nature of

class actions," it might be useful to expand the *Girsh* factors to include:

> [1] the maturity of the underlying substantive issues, as measured by experience in
> adjudicating individual actions, the development of scientific knowledge, the extent
> of discovery on the merits, and other factors that bear on the ability to assess the
> probable outcome of a trial on the merits of liability and individual damages; [2]
> the existence and probable outcome of claims by other classes and subclasses; [3]
> the comparison between the results achieved by the settlement for individual class
> or subclass members and the results achieved—or likely to be achieved—for other
> claimants; [4] whether class or subclass members are accorded the right to opt out
> of the settlement; [5] whether any provisions for attorneys' fees are reasonable; and
> [6] whether the procedure for processing individual claims under the settlement is
> fair and reasonable.

148 F.3d at 323. "Unlike the *Girsh* factors, each of which the district court must consider before

approving a class settlement, the *Prudential* considerations are just that, prudential." *In re Baby*

*Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013).

### (i)    Complexity, Expense, And Likely Duration Of Litigation

"The first [*Girsh*] factor captures the probable costs, in both time and money, of continued litigation." *In re NFL Players Concussion Inj. Litig.*, 821 F.3d at 437. A roadmap exists for what litigation could look like. A Rule 26(f) Report filed in another digital accessibility case identified the defendant's intention to conduct discovery into the plaintiff's disability, his interest in and motivation for accessing the defendant's online store, his prior attempts to access the same, and his intention to return to the website, as well as the plaintiff's intention to conduct discovery. *Murphy v. Mast Gen. Store, Inc.*, No. 1:20-cv-00079, Doc. 14 (W.D. Pa. June 22, 2020). The parties anticipated written discovery, depositions, expert reports, and cross-motions for summary judgment. *Id*. None of this would yield a better result than the result reached in the Agreement. There is no additional relief Plaintiff could obtain that justifies the added complexity, expense, and duration of continued litigation.

### (ii)    Reaction Of Class To Settlement

"The second *Girsh* factor attempts to gauge whether members of the class support the settlement." *In re NFL Players Concussion Inj. Litig.*, 821 F.3d at 438. As explained, *see* Section (V)(B)(1)(iv) *supra*, the injunctive relief exceeds or is comparable to the obligations contained in every publicly available settlement resolving digital accessibility claims of which Plaintiff's counsel are aware, including settlements achieved by the DOJ and those approved in *Eyebobs*, *Charles Tyrwhitt*, *The Hundreds*, *Optavia*, *P.C. Richard*, *Le Sportsac*, *Mondelēz*, and *iFit*. It is unlikely the Agreement will draw criticism from industry advocates or the class.

### (iii)    Stage Of Proceedings And Discovery Completed

"The third *Girsh* factor captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an

adequate appreciation of the merits of the case before negotiating." *In re NFL Players Concussion Inj. Litig.*, 821 F.3d at 438-39. Counsel have prosecuted similar claims since 2016. Plaintiff has filed such claims since 2020. Plaintiff and his legal team visited Defendant's online store and developed firsthand knowledge of the access barriers that exist. From that knowledge, and their experience prosecuting similar claims, Plaintiff and his counsel adequately appreciated the merits of their case and the available relief. Because the Agreement achieves the very relief Plaintiff would request at summary judgment or trial, the Court should not draw a negative inference from the parties' resolution at an early stage without formal discovery.

### (iv)    Risks Of Establishing Liability And Damages

"The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re NFL Players Concussion Inj. Litig.*, 821 F.3d at 439. These factors favor settlement because Plaintiff cannot reasonably anticipate achieving more complete injunctive relief at trial than the parties have agreed to in the Agreement. In addition, Defendant might successfully raise various affirmative defenses in dispositive motions or at trial, including that it has no obligations under the ADA to make its online stores accessible to blind shoppers or that any further modifications to its online stores would impose an undue burden or fundamentally alter its business. Given the Agreement's relief and Defendant's potential defenses, these factors weigh in favor of settlement.

### (v)    Risks Of Maintaining Class Action Through Trial

The sixth *Girsh* factor is "toothless" in a settlement class since "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *In re NFL Players Concussion Inj. Litig.*, 821 F.3d at 440. In any event, this factor weighs in favor of settlement still because Plaintiff has no adverse interests to those of

17

the class, and is unlikely to develop any such interests, like regaining his sight such that he no longer requires Defendant's online store to be compatible with screen readers.

### (vi)    Ability Of Defendant To Withstand Greater Judgment

"The seventh *Girsh* factor is most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement." *In re NFL Players Concussion Inj. Litig.*, 821 F.3d at 440. This factor is less relevant, as Plaintiff seeks injunctive relief. Either way, the Agreement cuts no corners in outlining Defendant's future accessibility obligations. It requires Defendant to: ensure that the U.S. portions of all the Digital Properties are Accessible; designate an internal Accessibility Coordination Team; retain an external Accessibility Consultant; provide accessibility training and refresher training; conduct both automated and end-user accessibility testing; and more. No greater judgment is necessary (or reasonably available).

### (vii)    Range Of Reasonableness Of Settlement In Light Of Best Possible Recovery And All Attendant Risks Of Litigation

"In evaluating the eighth and ninth *Girsh* factors, [courts] ask whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re NFL Players Concussion Inj. Litig.*, 821 F.3d at 440. "The[se] factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id*. The Agreement represents good value for any case. If Plaintiff were successful at trial, he would be entitled only to the injunctive relief the Court deemed appropriate. In making a request for such relief, Plaintiff would direct the Court to the settlements achieved by the DOJ in closely analogous cases and to the settlements approved in this District, *see* Section (V)(B)(1)(iv) *supra*, which the Agreement tracks. Once again, because the Agreement exceeds or is comparable to the "best possible recovery" achieved by the DOJ and in similar cases, the eighth and ninth *Girsh* factors weigh in favor of approval.

(viii)    *Prudential* Factors

While many of the *Prudential* factors are irrelevant to actions seeking injunctive relief, those that are relevant weigh in favor of approval. The third *Prudential* factor compares the "results achieved by the settlement for individual class . . . members and the results achieved—or likely to be achieved—for other claimants[.]" *Prudential*, 148 F.3d at 323. As explained, no other claimant is likely to achieve any better injunctive relief than the Agreement provides. The fifth *Prudential* factor considers "whether any provisions for attorneys' fees are reasonable[.]" *Id*. Defendant has agreed to pay Plaintiff's attorneys' fees and costs in the amount of $49,000.00. Ex. 1, § 25. A fee petition will offer an overview of Plaintiff's fees and costs. Since the petition remains subject to Court approval, this factor does not weigh against settlement.

**C.    The Proposed Notice And Notice Plan Satisfy The Requirements Of Rule 23(e) And Due Process**

"The court must direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(1)(B). Rule 23(b)(2) contains "no rigid rules to determine whether a settlement notice to class members satisfies constitutional and Rule 23(e) requirements." William B. Rubenstein, 3 *Newberg on Class Actions* § 8:15 (6th ed. 2022); Fed. R. Civ. P. 23(c)(2). In cases certified under Rule 23(b)(2), "the stringent requirement of Rule 23(c)(2) that members of the class receive the 'best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts,' is inapplicable." *Kaplan v. Chertoff*, No. 06-cv-05304, 2008 U.S. Dist. LEXIS 5082, at *38-39 (E.D. Pa. Jan. 24, 2008) (quotations omitted). "Rule 23(e) makes some form of post-settlement notice mandatory, although the form of notice is discretionary because Rule[23](b)(2) classes are cohesive in nature." *Id*. at *39 (alterations and quotations omitted); *see also Kyriazi v. W. Elec. Co.*, 647 F.2d 388, 393 (3d Cir. 1981) (same).

19

Notice is adequate where it is "well-calculated to reach representative class members," and describes the litigation, defines the class, explains the settlement's terms, provides information on the fairness hearing, describes how to file objections, states where complete information is located, and provides contact information. *Kaplan*, 2008 U.S. Dist. LEXIS 5082, at *36-37, *41 (citing *Prudential*, 148 F.3d at 327 n.86); *see also In re Baby Prods. Antitrust Litig.*, 708 F.3d at 180; *In re Processed Egg Prods. Antitrust Litig.*, 302 F.R.D. 339, 354 (E.D. Pa. 2014). The Parties have agreed on a form of notice and methods to disseminate the notice that are targeted to members of the visually disabled community and satisfy Rule 23.

The Long-Form Notice, *see* Agreement Ex. 1, describes the litigation, defines the Settlement Class, explains the Agreement's terms, provides information on the fairness hearing, describes the objection process, states where complete information is located, and provides contact information so Settlement Class Members can contact class counsel with questions.

The Notice Plan, *see* Ex. 2, requires Defendant to create a settlement website and publish links to the that website on Defendant's Website, social media, blogs, and newsletter. The Notice Plan requires Plaintiff to contact eleven organizations that advocate for individuals with visual disabilities and to request that the organizations notify their members of the settlement and objection deadline. This Notice Plan mirrors or exceeds the obligations of the notice plans approved in *Eyebobs*, *Charles Tyrwhitt*, *The Hundreds*, *Optavia*, *P.C. Richard*, *Le Sportsac*, *Mondelēz*, and *iFit.* The Court should approve the Long-Form Notice and Notice Plan.

## VI.    CONCLUSION

Plaintiff requests that the Court certify the class for settlement purposes, preliminarily approve the proposed settlement, and schedule a final fairness hearing at least 120 days after granting preliminary approval so the Parties may notify the Settlement Class.

Respectfully submitted,

Dated: September 5, 2025

/s/ *Kayla Conahan*

Kevin W. Tucker (He/Him) (PA 312144)
Kevin J. Abramowicz (He/Him) (PA 320659)
Chandler Steiger (She/Her) (PA 328891)
Stephanie Moore (She/Her) (PA 329447)
Kayla Conahan (She/Her) (PA 329529)
Jessica Liu (She/Her) (PA 328861)
**EAST END TRIAL GROUP LLC**
6901 Lynn Way, Suite 503
Pittsburgh, PA 15208
Tel. (412) 877-5220
ktucker@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com
kconahan@eastendtrialgroup.com
jliu@eastendtrialgroup.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on September 5, 2025, I will cause a true and correct copy of the foregoing document to be served on Defendant through the Court's Electronic Filing System.


Dated: September 5, 2025                    */s/ Kayla Conahan*
                                            Kayla Conahan